UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE GUARDIAN NEWS, INC. and SELIM ZHERKA,<br><br>        Plaintiffs,<br><br>    -against-<br><br>PHILIP AMICONE, individually,<br>EDMUND HARTNETT, individually,<br>JOHN A. LISZEWSKI, individually,<br>CITY OF YONKERS, New York,<br>PAUL WOOD, individually, POLICE OFFICERS JOHN DOE'S #1 to # 20, Individually, and SANITATION WORKERS #1 to # 20,<br><br>        Defendants. | **ECF Case**<br><br>07 Civ. 07078 (CLB) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

THACHER PROFFITT & WOOD LLP
*Attorneys for Defendants*
50 Main Street
White Plains, New York  10606
(914) 421-4100

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS ........................................................................................................2

ARGUMENT ..............................................................................................................................2

  PLAINTIFFS FAIL TO SATISFY THE
  STANDARD FOR A PRELIMINARY INJUNCTION ............................................................2

    A.  Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits ....................3

      1.  Plaintiffs' Claims Are Without Merit .......................................................................3

        a.  The City May Prohibit Newsrack Boxes in City Hall..........................................4

        b.  Plaintiffs' Placement of Certain Newsrack
           Boxes Violated the Yonkers City Code ..............................................................6

        c.  Plaintiffs' Distribution of the Newspaper
           Violated the Yonkers City Code ........................................................................7

      2.  Defendants Are Entitled to Qualified Immunity........................................................8

    B.  Plaintiffs Will Not Suffer Irreparable Harm
       in the Absence of a Preliminary Injunction ..................................................................9

CONCLUSION..........................................................................................................................10

**PRELIMINARY STATEMENT**

Respondents Philip Amicone, Edmund Hartnett, John A. Liszewski, City of Yonkers (the "City"), Paul Wood, Police Officers John Doe's #1 to #20 and Sanitation Workers #1 to #20 (collectively, "Defendants"), by and through their attorneys, Thacher Proffitt & Wood LLP, respectfully submit this memorandum of law in opposition to the motion of Plaintiffs The Guardian News, Inc. (the "Guardian") and Selim Zherka ("Zherka"; the Guardian and Zherka are collectively referred to herein as "Plaintiffs") seeking a preliminary injunction barring Defendants from: (1) confiscating any newsracks placed by the Guardian on city-owned property in the City for distribution of The Westchester Guardian (the "Newspaper"); (2) confiscating any copies of the Newspaper intended to be distributed on city-owned premises within the City; (3) threatening employees of the Guardian with arrest/incarceration for distributing the Newspaper within the City; (4) threatening Zherka with arrest/incarceration for distributing the Newspaper within the City; (5) issuing to Guardian employees and Zherka appearance tickets charging them with violating the City Charter for distributing the Newspaper; and (6) directing Defendants to forthwith return to Plaintiffs all of the confiscated newsracks and newspapers.

Plaintiffs clearly do not meet the standard for a preliminary injunction. Specifically, they failed to demonstrate that there is a likelihood of success on the merits. Plaintiffs' rights were not violated by Defendants. Defendants were simply enforcing the Yonkers City Code, which Plaintiffs have not challenged herein. A preliminary injunction would prevent Defendants from enforcing and thereby allow Plaintiffs to disregard the Yonkers City Code. This would jeopardize the health, safety and welfare of the residents of the City.

In addition, those of the Defendants sued in their individual capacities are entitled to qualified immunity against Plaintiffs' claims.

There would be no irreparable harm to Plaintiffs in the absence of a preliminary injunction. The Guardian's newsrack boxes are located throughout the City. In addition, Plaintiffs can distribute the Newspaper in the City, provided they comply with the Yonkers City Code.

Accordingly, Plaintiffs' motion for a preliminary injunction should be denied.

## STATEMENT OF FACTS

The pertinent facts are set forth in the Affidavit of Kevin J. Plunkett sworn to on September 19, 2007 (the "Plunkett Aff."), the Affidavit of Charles Gardner ("Gardner Aff.") sworn to on September 20, 2007 and the Affidavit of John Liszewski sworn to on September 20, 2007 (the "Liszewski Aff."; the Plunkett Aff., Gardner Aff. and Lisziewski Aff. are collectively referred to herein the "Affidavits").[1] In order to avoid burdening the Court with another full recitation of the facts, such facts set forth in the Affidavits are incorporated by reference herein but will not be repeated.

## ARGUMENT

### PLAINTIFFS FAIL TO SATISFY THE STANDARD FOR A PRELIMINARY INJUNCTION

A plaintiff seeking to obtain an injunction based on alleged violations of First Amendment rights must demonstrate that (1) there is a likelihood of prevailing on the merits of the action; and (2) he or she is likely to suffer irreparable harm if the allegations are correct. Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996).

It is respectfully submitted that Plaintiffs have not met either prong of the standard and, therefore, are not entitled to a preliminary injunction against Defendants.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Affidavits.

2

A.  **Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits**

The first element for obtaining a preliminary injunction from the Court is establishing a likelihood of success on the merits of the action. The movant must either:

> demonstrate a likelihood of success on the merits or it must raise 'sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'

Bery, 97 F.3d at 694, quoting Sperry Int'l Trade, Inc. v. Government of Israel, 670 F.2d 8, 11 (2d Cir. 1982).

However:

> in the case in which 'the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the injunction should be granted if the moving party meets the more rigorous likelihood-of-success standard.

Bery, 97 F.3d at 694, quoting Plaza Health Laboratories, Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989).

As discussed below, Plaintiffs have not demonstrated a likelihood of success on the merits.

    1.  **Plaintiffs' Claims Are Without Merit**

Plaintiffs are seeking, inter alia, to recover an award for alleged violations of their rights guaranteed by the First and Fourteenth Amendments, and to permanently enjoin Defendants from interfering with Plaintiffs' distribution and/or dissemination of the Newspaper within the City and/or City Hall.

As discussed below, such contention is without merit because any actions by Defendants simply involved the enforcement of the Yonkers City Code, which Plaintiffs have not challenged in this action.

In addition, Defendants should be permitted to enforce the Yonkers City Code and issue violations if Plaintiffs' distribution and/or dissemination of the Newspaper within the City and/or City Hall violates the Yonkers City Code. Otherwise, Plaintiffs would be able to disregard the Yonkers City Code, which is intended to protect the public. Such a result cannot be condoned.

### a.     **The City May Prohibit Newsrack Boxes in City Hall**

Plaintiffs contend that they should be able to place newsrack boxes in City Hall. Plaintiffs, however, ignore the City's ability to restrict such placement for safety and security reasons.

The First Amendment "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Gannett Satellite Information Network, Inc. v. Metropolitan Transp. Auth., 745 F.2d 767, 772 (2d Cir. 1984), quoting Heffron v. International Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 647, 101 S.Ct. 2559, 2563 (1981).

In Gannett Satellite Information Network, Inc., the Second Circuit held that the Metropolitan Transportation Authority (the "MTA") could restrict Gannett Satellite Information Network, Inc.'s ("Gannett") right to distribute its newspapers through newsracks in MTA stations. It discussed the restriction of such right as follows:

> [t]he extent to which MTA may restrict Gannett's right to depends upon how the station's public areas are characterized for the purposes of First Amendment analysis. Public property is divided into three categories for this analysis, each of which is governed by different First Amendment standards. 'At one end of the spectrum are streets and parks which have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. A second category consists of public property which the state has opened for use by the public as a place for expressive activity' The third is '[p]ublic property which is not by tradition or designation a forum for public communication.'

4

Gannett Satellite Information Network, Inc., 745 F.2d at 772-773 (internal citations omitted), quoting Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45-46, 103 S.Ct. 948, 954-955 (1983).

The Second Circuit determined that the public areas of the MTA stations were in the third category, which could "still serve as a forum for First Amendment expression if the expression is appropriate for the property and is not 'incompatible with the normal activity of a particular place at a particular time.'" Gannett Satellite Information Network, Inc., 745 F.2d at 773, quoting Grayned v. City of Rockford, 408 U.S. 104, 1116, 92 S.Ct. 2294, 2303 (1972). It held that:

> [e]ven though MTA stations are appropriate forums for newsrack newspaper sales, MTA may impose reasonable time, place and manner restrictions on newsrack placement. '[R]estrictions of this kind are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels, for communication of the information.'

Gannett Satellite Information Network, Inc., 745 F.2d at 773 (internal citations omitted), quoting Perry Education Ass'n, 460 U.S. at 49, 103 S.Ct. at 957.

In Jacobsen v. United States Postal Service, 993 F.2d 649 (9th Cir. 1993), the court held that the government could move a newsrack for public safety reasons.

In the instant matter, City Hall is similar to the MTA stations at issue in Gannett Satellite Information Network, Inc. Indeed, City Hall is public property which is not by tradition or designation a forum for public communication. City Hall should not serve as a forum for First Amendment expression through newsrack boxes because such boxes are incompatible with the normal activity of City Hall at a particular time. Id.

5

Specifically, newsrack boxes present safety and security concerns. See Gardner Aff. at ¶ 18. As a result, all newsrack boxes are prohibited in City Hall. See id. Such prohibition is reasonable and rational and based upon compelling state interests to ensure that the health, safety and welfare of the residents of the City are not compromised. The removal of the Guardian's newsrack boxes from City Hall, therefore, was entirely proper.

Assuming, arguendo, that City Hall is an appropriate forum for First Amendment expression through newsrack boxes, the City may impose reasonable time, place and manner restrictions on newsrack boxes. Gannett Satellite Information Network, Inc. The City has imposed such restrictions by permitting newspapers and similar material to be left at City Hall on the desk, rather than inside a newsrack box. See Gardner Aff. at ¶ 19. This allows the First Amendment expression without the safety and security concerns associated with newsrack boxes.

Notably, Plaintiffs and their representatives have been advised that they could leave their newspapers on the desk. See Gardner Aff. at ¶¶ 18, 20.

      b.    **Plaintiffs' Placement of Certain Newsrack Boxes Violated the Yonkers City Code**

By requesting the Court to permanently enjoin Defendants from interfering with Plaintiffs' distribution and/or dissemination of the Newspaper within the City, Plaintiffs are essentially contending that they should be able to place newsrack boxes anywhere they please within the City. Such contention is contrary to law.

A speaker "may be excluded from a public forum only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." ACORN v. City of Phoenix, 798 F.2d 1260, 1265 (1986), quoting Cornelius v. NAACP Legal Def. & Educational Fund, Inc., 473 U.S. 788, 800, 105 S.Ct. 3439, 3448 (1985)

In <u>Jacobsen v. United States Postal Service</u>, 993 F.2d 649 (9th Cir. 1993), the Ninth Circuit held that (1) newsracks could be removed from municipal sidewalks that were public fora for safety reasons; and (2) ingress-egress sidewalks on federal land outside post offices were nonpublic fora from which newsracks could be removed. It determined that there was adequate justification for moving plaintiff's newsrack, which was situated in the middle of the sidewalk, to an area out of the way of foot traffic. The court reasoned that there was heavy traffic in that area at various times during the day and a person could have bumped into it rather easily.

Yonkers City Code § 103-94A provides that:

> Except as may be otherwise provided herein, <u>no person, firm or corporation shall encumber or obstruct the sidewalks, streets or public ways with goods</u>, wares, merchandise, boxes, household furniture or other articles unless such articles are temporarily placed on the sidewalk, street or public way solely for the purposes of loading or unloading and such articles are removed without delay and at all times sufficient space is maintained to permit the uninterrupted passage of pedestrians.

<u>Id.</u> (emphasis added).

The Guardian's representative received a summons because his placement of a newsrack box in front of a bus stop violated Yonkers City Code § 103-94A.[2] <u>See</u> Gardner Aff. at ¶ 12, Ex. F. Specifically, such newsrack box blocked pedestrian traffic. <u>See id.</u> at ¶ 15. The removal of such newsrack box was reasonable and rational and based on compelling state interests to ensure that the health, safety and welfare of the residents of the City were not compromised.

    c.    **Plaintiffs' Distribution of the<br>Newspaper Violated the Yonkers City Code**

Plaintiffs' requested relief would also make them exempt from the permit requirements applicable to everyone and every entity in accordance with the Yonkers City Code.

---

[2] It appears that Yonkers City Code § 103-94 would be subject to the provisions of Yonkers City Code § 33 <u>et seq.</u> Upon further review, the newsrack box placed on the sidewalk may also be violative of Yonkers City Code § 33-4. <u>See</u> Gardner Aff. at footnote 1.

7

Specifically, Yonkers City Code § 100-35 provides that:

> No person shall post any bill, placard, notice or other paper upon any structure, tree, rock, article or thing within any park or public place or paint or fix thereon in any way any advertisement, notice or exhortation, except under permit and in strict conformity therewith. <u>No person shall distribute, hand out or cast about any card, circular, pamphlet or printed matter within any park or upon any public place.</u>

Id. (emphasis added).[3]

The Guardian's representatives were issued summonses for violations of Yonkers City Code § 100-35 because they were distributing the Newspaper in and around City Hall, a public place, without a permit. See Gardner Aff. at ¶¶ 24-26.

If the Guardian wishes its representatives to distribute the Newspaper in and around City Hall, they must comply with Yonkers City Code § 100-35.

2. **Defendants Are Entitled to Qualified Immunity**

Plaintiffs sued most of Defendants in their individual capacities. Defendants sued in their individual capacities, however, are entitled to qualified immunity with respect to Plaintiffs' claims against them.

Qualified immunity:

> protects government officials from civil liability when performing discretionary duties 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'

Demoret v. Zegarelli, 451 F.3d 140, 148 (2d Cir. 2006), quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982); see also Kerman v. City of New York, 374 F.3d 93 (2d Cir. 1994).

---

[3] Yonkers City Code § 100-35 must be read in conjunction with Yonkers City Code § 100-31 et seq. wherein permits are required to sell newspapers within parks and other public places throughout the City.

In order to determine whether qualified immunity applies "the threshold inquiry is whether the plaintiff's version of the facts 'show[s] the officer's conduct violated a constitutional right.'" Demoret, 451 F.3d at 148, quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001). If a plaintiff is unable to demonstrate the threshold inquiry, the analysis stops. Demoret.

If the initial threshold is met, the inquiry turns to whether the right was clearly established. Demoret. A defendant is:

> entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law. In other words, government officials will be immune from liability if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time.

Id. at 148-149 (internal citations omitted).

It is clear that Defendants are entitled to qualified immunity because, as discussed above, Plaintiffs have not demonstrated that Defendants violated their constitutional rights.

In any event, Defendants were acting under their authority in enforcing the Yonkers City Code, which was at the time was and still is in effect. Notably, Plaintiffs have not challenged the constitutionality of the Yonkers City Code. It, therefore, was objectively reasonable for Defendants to believe that their actions were lawful at the time.

Accordingly, Plaintiffs have not demonstrated a likelihood of success on the merits.

B.  **Plaintiffs Will Not Suffer Irreparable Harm in the Absence of a Preliminary Injunction**

Plaintiffs will not suffer irreparable injury without the requested preliminary injunction. Indeed, a number of the Guardian's newsrack boxes are located throughout the City. See Liszewski Aff. at ¶ 8, Ex. B. The Newspaper, therefore, is being distributed in the City.

In addition, Plaintiffs are permitted to distribute the Newspaper in the City, but must do so in accordance with the law.

Accordingly, Plaintiffs' requested preliminary injunction should be denied.

## CONCLUSION

For the reasons set forth above, it is respectfully requested that the Court deny Plaintiffs' motion in its entirety and grant Defendants such other and further relief as this Court may deem just and proper.

Dated: White Plains, New York
September 20, 2007

                                      THACHER PROFFITT & WOOD LLP
                                      *Attorneys for Defendants*


By:    s/ Darius P. Chafizadeh
       Kevin J. Plunkett
       Darius P. Chafizadeh
       50 Main Street
       White Plains, New York 10606
       (914) 421-4100