

Thacher Proffitt & Wood LLP
50 Main Street
White Plains, NY  10606
914.421.4100

Fax: 914.421.4150
www.tpw.com

Direct Dial: 914.421.4155
kplunkett@tpw.com

Admitted in NY, FL

September 25, 2007

**BY HAND**

Hon. Charles L. Brieant
United States District Judge
United States Courthouse
300 Quarropas St., Room 275
White Plains, New York 10601

> *Re:*    The Guardian News v. Philip Amicone, et al.
>          ECF Case No. 07 Civ. 07078 (CLB)

Dear Judge Brieant:

This firm represents the City of Yonkers Defendants (the "City") in connection with the referenced action.  The Court issued an Order on Friday, September 21, 2007 preserving the status quo until the outcome of the trial scheduled to start on November 12, 2007.  (The transcript of the September 21, 2007 court proceedings (the "Transcript") is attached as Exhibit A.  The Court's Order starts at page 14).

On September 24, 2007, Plaintiffs, in defiance of the Court's status quo Order and in a continuing deliberate attempt to create legal action by the City, intentionally placed two unsecured newsrack boxes directly abutting City Hall (one at the north entrance and one at the east entrance), areas in which no other newsrack boxes are located or have ever been located.  In short, Plaintiffs are intentionally seeking to change the status quo and are forcing the City of Yonkers to seek the Court's guidance.

We request that (1) Plaintiffs be ordered to remove said newsrack boxes immediately; or (2) the City be permitted to remove the newsrack boxes and inventory them until Plaintiffs agree to retrieve them.

The unsecured newsracks are not "on public property such as sidewalks and the like" or in the public forum.  See Transcript at p. 14, line 4.  In addition, the newsracks in question pose a

Hon. Charles L. Brieant
September 25, 2007                                                                 Page 2.

potential security risk to employees and the public as they are in direct proximity to the City Hall
Building and to parked cars, stairways and entrances.

Defendants attempted to resolve this issue by faxing the attached letter to Jonathan
Lovett, Esq., Plaintiffs' attorney, and asking him to contact the undersigned to discuss the
concerns set forth therein by 1 p.m. today. (The letter dated September 24, 2007 from the
undersigned to Jonathan Lovett, Esq. is attached as Exhibit B). Mr. Lovett has not contacted me.
We, therefore, bring this matter to Your Honor's attention in accordance with the Court's Order.
See Transcript at p. 14, lines 7-9.

We respectfully request the Court's prompt attention to this matter and await direction
from Your Honor on how this matter should be addressed.

Thank you for your consideration.

                                                              Respectfully submitted,

                                                              Kevin J. Plunkett

Attachments

cc:      Jonathan Lovett, Esq. (via facsimile; without attachments)
         Frank Rubino, Esq. (via facsimile; without attachments)

1    written materials in a public place.

2         THE COURT:  What they're actually doing is they're

3    using a box in lieu of a person, is that right?

4         MR. LOVETT:  They do both.  They put news racks out,

5    and the City confiscated them.  And counsel advised me that

6    they had 35 news racks that they believed belonged to my

7    client.  Every one of them says Westchester Guardian on it.

8    He's now provided us with photographs of the seized box, and

9    they now present you with a series of photographs pretending

10   that all is alive and well in Yonkers.  Those news racks were

11   stolen by the City --

12        THE COURT:  Please don't overdo it.  I understand

13   there's a legal issue here.  There's no use getting into

14   perjorative comments.

15        MR. LOVETT:  The claim by them that news racks are not

16   permitted in City Hall for security reasons on its face I think

17   is kind of silly.

18        THE COURT:  We're not talking about City Hall.  We're

19   talking about streets, aren't we, sidewalks?

20        MR. LOVETT:  And City Hall.  Any public place owned by

21   the City.

22        THE COURT:  I don't know that every public place owned

23   by the City is public for First Amendment purposes.  They own

24   the schools, they own the water works, they own a couple of

25   piers down by the river.  I think the case Judge Knapp had was

1    right on point with this.  You can put them on the sidewalks

2    along with the New York Times and the Westchester Journal News.

3        MR. LOVETT:  I agree with that.  However, in City Hall

4    there was a news rack on the stairwell which had pro Amicone

5    newspapers in it.  When a Guardian news rack was put opposite,

6    not blocking any pedestrian flow, on the same floor, it was

7    taken and confiscated and the newspapers were thrown out.  My

8    client was told you can put your newspapers down on a security

9    desk in City Hall.  They did.  And every time they did the

10   papers were confiscated and thrown out.  The City is now taking

11   the position that they were just doing what they thought was

12   appropriate to protect the City from God knows what.

13       We have video after video of police officers calling

14   the employees of the Guardian distributing the papers thugs,

15   punks.  The head of the library system on video told the

16   publisher that his First Amendment rights were not welcome in

17   Yonkers.  "Take your newspapers and your publications and get

18   out."  We are asking for a preliminary injunction to prevent a

19   repeat.

20       In that connection they have issued summonses to

21   approximately eleven employees of the Guardian News for

22   nondisruptively handing out the newspaper around City Hall and

23   public places.  And each one, with one exception that's

24   irrelevant to this motion, is cited for violating Section

25   100-35 which is a flat out prohibition of handing out any

1    literature on public property.  I think the likelihood of

2    success is extremely high.  The suppression and violation of my

3    client's First Amendment rights is I believe self-evident.  And

4    based on clearly established law, the City is going to lose.

5         And I see absolutely no basis whatsoever to allow the

6    City, now that the boxes or some of them have been put back on

7    the street, to go out and seize them again.  Because they've

8    made it clear that this is not just a news rack issue.  It's

9    content based.  And many of the people who did the

10   confiscating, including people from the mayor's staff, made it

11   absolutely clear that it was what was being said in the paper

12   that was offensive to them and that was the reason for

13   confiscation and suppression.  I think we're going to need a

14   hearing and we request the Court to grant us one as soon as

15   practical.

16        THE COURT:  All right.  Thank you.

17        The Court will hear Mr. Plunkett at this time.

18        MR. PLUNKETT:  Good morning, your Honor.  Subsequent

19   to the 1979 decision, which the Court will be reviewing, the

20   City of Yonkers did amend its code to comply with the

21   directives of Judge Knapp.  And it's those codes that are in

22   effect today.  And quite frankly, your Honor, the complaint

23   that we have does not raise a facial challenge to those

24   ordinances.

25        THE COURT:  What exactly does the ordinance say?

1    MR. PLUNKETT:  The ordinance, your Honor, does permit

2    news racks.  It is I think Section 33 of the code which does

3    permit news racks, does have some regulatory language.

4    THE COURT:  Why don't you read it?  We have a lawsuit

5    which has to be dealt with and adjudicated.  It seems to me we

6    ought to consider whether you can find some way to alleviate

7    the problem pending trial without the necessity of two hearings

8    followed perhaps by two appeals.  Otherwise, the Court is going

9    to have to consolidate the trial on the merits, give you

10   whatever time you need for discovery, and make a complete

11   record.  I don't see how you cannot tolerate the racks.

12   MR. PLUNKETT:  We understand that, your Honor.  And

13   I'm not going to address the hyperbole.

14   THE COURT:  I asked him to stop that.

15   MR. PLUNKETT:  I understand, your Honor, there's no

16   need to do that.  We are here.  We have a code.

17   THE COURT:  Read it to me.

18   MR. PLUNKETT:  It's a few pages long.

19   THE COURT:  Just read me the operative parts.  Because

20   I don't see how you can do it and I get the impression from

21   Mr. Lovett that other people have racks and if they have racks,

22   a paper which doesn't particularly like the mayor is also

23   entitled to have racks.

24   MR. PLUNKETT:  We don't disagree.  Let me read the

25   purpose clause, your Honor.  "The unregulated placement of news

1   racks and public rights of way presents an inconvenience and

2   danger to the safety and welfare of persons using such rights

3   of way, including pedestrians, persons entering and leaving

4   vehicles, whether automobiles, taxi cabs, private livery or

5   omnibuses, and buildings and persons performing essential

6   utility traffic control and emergency services."

7       These unregulated news racks are so located as to

8   cause an inconvenience or danger to persons using public rights

9   of way are unsightly and constitute a public nuisance.  The

10  provisions contained in this chapter are in pursuance of and

11  for the purpose of securing and promoting the public health,

12  morals and general welfare of persons in the City of Yonkers in

13  their use of public rights of way.  And it has definitions, it

14  has --

15      THE COURT:  Tell me what the operative words are that

16  you claim this particular publisher violated.

17      MR. PLUNKETT:  Fine, your Honor.  The news racks that

18  were confiscated, the affidavit that's before the court from

19  the Commissioner of Public Works indicates that they, 33 were

20  in the rights of way of pedestrians on the streets.  They --

21      THE COURT:  Are there any other newspaper racks of

22  other publications that are in the rights of way of the

23  pedestrians.

24      MR. PLUNKETT:  None that were obstructing the right of

25  way, your Honor.  These were obstructing the right of way.

1    THE COURT: So we have a triable issue of fact.

2    MR. PLUNKETT: I'll present the affidavit of

3    Mr. Lesuski which indicates that we believe that there were 56

4    located throughout the City. 33 were removed and returned.

5    And the police department now retains three racks, one of which

6    was on South Broadway and confiscated because it was right in

7    the middle of the right of way.

8    THE COURT: You don't care about the racks, do you?

9    You just care about the issues in the lawsuit. You don't want

10    to keep three racks.

11    MR. PLUNKETT: No, your Honor. We said in our

12    affidavit we'll give them back.

13    THE COURT: Give them back.

14    MR. PLUNKETT: We gave back the 33 already, your

15    Honor.

16    THE COURT: Is it possible that you could have a

17    discussion and see if you could maintain some sort of temporary

18    relief by agreement, and I'll give you a trial date?

19    MR. PLUNKETT: I don't see why we couldn't do that,

20    your Honor.

21    THE COURT: I think you ought to do that. And I think

22    if you go in the jury room, just the attorneys, and talk with

23    each other, see if you can get a stipulation on the record, see

24    if you can get a case management plan that would allow it to be

25    tried within the next 30 to 60 days. And I have to tell you, I

1    take a very strong supportive view of First Amendment rights,

2    and if anybody is selling papers or handing them out, I think

3    there's some allegations here that there were people, not

4    racks, just persons, that's what I heard from Mr. Lovett in

5    between the implications.

6        MR. PLUNKETT:  There were people who did not have a

7    permit in places that do business for City matters that were

8    given violations.

9        THE COURT:  They were in the streets?

10       MR. PLUNKETT:  No, your Honor.  Some of them were in

11   City Hall.  And some of them, I believe, your Honor, were

12   distributing the newspaper in different public places which

13   were not park land, your Honor.

14       THE COURT:  What public places?  What kind of public

15   places?

16       MR. PLUNKETT:  Right outside City Hall.  On the steps

17   of City Hall.

18       THE COURT:  That's perfectly okay as far as I can see.

19   Maybe not on the steps but certainly on the sidewalk.

20       MR. PLUNKETT:  It was on the steps, your Honor.

21       THE COURT:  You're going to have a problem unless you

22   can do something practical.  I'd like to finish my calendar.

23   Go through that door and come out with a stipulation and a

24   reasonable schedule for pretrial discovery.  If you can't

25   settle it we'll try it.  The case has First Amendment issues.

1    It's argued here that they don't like the content.  Maybe

2    that's not true.  But if they are regulating this paper any

3    differently than any other paper, it's a problem.

4         MR. PLUNKETT:  If I might.  What's happened here, your

5    Honor, is this paper has created the issues that now come

6    before this Court, whether they've done it intentionally or in

7    what vain.  We permit and the City permits news racks as long

8    as they don't disrupt public right of way and are not a

9    nuisance.  We will continue to do that.  Since August 21st when

10   I wrote to Mr. Lovett there has been no additional issues that

11   have created any need for any type of a preliminary injunction.

12   And we will continue, your Honor, to enforce codes that are not

13   even being challenged in this courtroom.

14        THE COURT:  I'm going to tell you this.  When I see an

15   opportunity to have a First Amendment issue, I think that's

16   what I'm here for.

17        MR. PLUNKETT:  I understand, your Honor.

18        THE COURT:  I'm here for that.  I'm not here for a lot

19   of these other things that we have to take care of, but I'm

20   here for the First Amendment.  But see, if you can't make

21   temporary peace, and we'll give you a reasonable time to get

22   ready for trial, we'll have a trial and send you all down to

23   the Court of Appeals.  If you don't want to do it that way, I'm

24   going to have you in very promptly for an evidentiary hearing.

25   I hope you won't put me to that.  I'll do that if I have to.

1      MR. PLUNKETT:  Thank you, your Honor.

2      MR. LOVETT:  May I add one bit of information.  The

3  news rack legislation that Mr. Plunkett is relying on has not

4  been utilized in any enforcement proceeding whatsoever.  My

5  clients were not charged and the employees of my clients were

6  not charged with violating news rack provisions.  They were

7  charged with handing out written material on public property.

8      THE COURT:  Well, that was yesterday, wasn't it?

9  Let's talk about the future.  You have a lawsuit.  The Court

10 recognizes you have a lawsuit.  The Court is prepared to deal

11 in a reasonable, fair and orderly fashion with your lawsuit.

12 In order to do that, I have to get some kind of agreement for

13 peace pending trial.  I urge you to negotiate such a procedure

14 with opposing counsel.  If you come back and you can't or won't

15 do it, I have to go forward with the prompt hearing on the

16 injunction.  You're going to wind up with two appeals instead

17 of one.  That's no good.  So go talk sense.  Don't move back,

18 move forward.  Okay?

19     MR. LOVETT:  Very good.

20     THE COURT:  And don't make abusive comments.

21     (Recess)

22     MR. LOVETT:  We were not able to reach any agreement,

23 your Honor.

24     THE COURT:  All right.  We'll have an evidentiary

25 hearing on the preliminary injunction.

1   MR. PLUNKETT:  We felt we were close to reach a

2  hearing, reaching a compromise.  But for whatever reason, it

3  hasn't been acceptable to the plaintiffs.  We were looking to

4  try to resolve the matters going forward as the Court had

5  suggested.  And I don't know whether it's worth having a court

6  representative see if our approach was --

7   THE COURT:  Maybe it would be.  I have to finish my

8  calendar.  If you want to stand by, I'll try to see if I can do

9  something.  But frankly I'd rather call you in and have a

10  hearing.

11   MR. PLUNKETT:  We're prepared for that too.

12   THE COURT:  And send you down to the Court of Appeals.

13  Because I can't see why it's not in the interest of both of you

14  to do it in a more orderly way where you'll have a complete

15  record.  I should think either of you would feel you needed

16  that.

17   MR. PLUNKETT:  We would hope to resolve it if we can.

18   THE COURT:  You can go back in there and I'll join you

19  as soon as I can.

20   (Recess)

21   THE COURT:  The Court has reviewed this matter and

22  will now make the following directions.  The matter is set for

23  plenary trial before the Court.  The complaint and the motion

24  for preliminary injunction are consolidated under Rule 65(a)

25  under the Federal Rules of Civil Procedure.  Trial will

1    commence on 9:00 o'clock on November 12th.  In the meantime,

2    the Court orders by way of a temporary restraining order that

3    the plaintiff may install its newspaper racks anywhere in the

4    City on public property such as sidewalks and the like.  If any

5    particular location raises a health or a safety issue, the

6    attorney for the defendants will notify the plaintiff's

7    attorney and it will be discussed by counsel.  And if counsel

8    cannot resolve it, then it can be brought to the attention of

9    this Court, although I certainly hope that won't be necessary.

10       This is temporary relief only and pending the trial of

11   the matter.  And the Court finds that the public interests in

12   the First Amendment rights of the plaintiff justify this much

13   provisional relief prior to trial on the merits of the case.

14       The plaintiff's newspaper will also have the same

15   privileges within City Hall that are enjoyed by any other

16   newspaper.  The Court understands that there's a desk or table

17   now where there used to be a rack and that they are in piles on

18   the table.  And this newspaper of the plaintiff shall have the

19   same privileges in connection with that distribution as any

20   other newspaper or periodical.

21       The City of Yonkers will inform employees that they

22   are not to remove or destroy or take any adverse action against

23   the newspaper in that course of distribution.  Distribution by

24   individuals on sidewalks will be permitted.  There will be

25   nothing done in the street itself where vehicles and traffic

1    move until a further order of this Court.  All of this is

2    without prejudice to anybody's rights and is found necessary in

3    the public interest between now and the trial of the action on

4    November 12th.

5        I have discussed at some length the Court's intended

6    ruling with counsel informally and I understand that it's not

7    consented to.  But the Court finds this relief necessary in the

8    interest of justice and because of the important constitutional

9    issue involved.

10       As to all other matters, status quo will continue

11   until further order of the court.  I open the record to counsel

12   if I omitted to say anything which I had stated earlier with

13   counsel.

14       MR. PLUNKETT:  I think there was also a discussion

15   regarding City Hall steps.

16       THE COURT:  Yes.  The steps themselves for the time

17   being are not to be regarded as a place for distribution.

18       Anything else?

19       MR. PLUNKETT:  Nothing from the City's perspective.

20       MR. LOVETT:  Yes, your Honor.  With respect to the

21   placement of periodicals in City Hall, there has been for an

22   extensive period of time a wire news rack on a stairwell not in

23   the way of pedestrian traffic.  And that has just recently been

24   removed.  I think that my client should have the same right

25   that every other newspaper had --

1    THE COURT:  If the rack is restored, your client

2    should have that right.  If there's no rack there and the rest

3    of them are on a desk, as the Court understands them to be,

4    then your client is entitled to placement on the desk.  I

5    thought that I ordered that.

6    MR. LOVETT:  They removed the rack only I think to

7    frustrate my clients.

8    THE COURT:  Maybe they did, but it frustrates

9    everybody.  If the rack is restored, the plaintiff's periodical

10   is entitled to be on the rack along with everybody else.

11   MR. LOVETT:  One other issue, your Honor.  The

12   sidewalk distribution I presume would permit someone who is

13   actually standing on the sidewalk from nondisruptively handing

14   a newspaper to a motorist.

15   THE COURT:  If the car is stopped, yes.  Not for a

16   moving vehicle and not to go into the street to do it.  I don't

17   think that would happen very much.  Please don't try to

18   micromanage this matter because it's only for a very short

19   period.  The Court will reach the merits of the case in

20   November.

21   MR. LOVETT:  I understand.  But I just don't want

22   something to occur that is a violation.

23   THE COURT:  The Court appreciates the cooperation of

24   counsel here today.  And the matter is continued until November

25   12th.  What is your agreement on the discovery schedule?

1          MR. LOVETT:  We agreed to serve document production

2    requests by October 5.  We are not going to serve

3    interrogatories.  The document production is due by October

4    19th.  Depositions to begin October 23 and to be completed

5    November 7.

6          THE COURT:  So stipulated?

7          MR. PLUNKETT:  Yes, your Honor.

8          THE COURT:  All right.  Thank you both for your

9    efforts.

10          (Proceedings adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25


**Thacher**
**Proffitt**

Thacher Proffitt & Wood LLP
50 Main Street
White Plains, NY  10606
914.421.4100

Fax: 914.421.4150
www.tpw.com

Direct Dial: 914.421.4155
kplunkett@tpw.com

Admitted in NY, FL

September 24, 2007

**VIA FACSIMILE (914) 428-8916**

Jonathan Lovett, Esq.
Lovett & Gould, LLP
222 Bloomingdale Road
White Plains, New York  10605

      *Re:*    The Guardian News v. Philip Amicone, et al.
              ECF Case No. 07 Civ. 07078 (CLB)

Dear Jon:

As I mentioned in my voice mail message at 6:00 pm tonight, I have been notified by Yonkers Corporation Counsel, Frank Rubino, Esq., that today your clients intentionally placed two unsecured newsrack boxes directly abutting City Hall (one at the north entrance and one at the east entrance). Please note, there are no other newsrack boxes in these areas.

Pursuant to Judge Brieant's Order, the unsecured newsrack boxes are not "on public property such as sidewalks and the like" which are public forums. See September 21, 2007 Order, Transcript at p. 14, line 4. Rather, the unsecured newsrack boxes are placed within a few feet of the entrance to City Hall and the steps to City Hall. Distribution by individuals outside City Hall (not on City Hall steps) does not include the placement of newsrack boxes at City Hall entrances.

Also, the intentional placement of the newsrack boxes poses a potential security and safety risk to employees and the public as they are in direct proximity to the City Hall Building and to parked cars, stairways and entrances.

Pursuant to Judge Brieant's Order of September 21, 2007, the City of Yonkers hereby requests that your client immediately remove these boxes from areas at City Hall. Of course,

September 24, 2007                                                    Page 2.

your client can distribute its newspaper in City Hall, where other periodicals are distributed, by leaving it in the designated area for the public to access.

Please contact me to discuss the concerns raised by the Corporation Counsel as set forth in this letter. Your failure to contact me by 1:00 pm tomorrow will require me to contact Judge Brieant's chambers.

Very truly yours,

Kevin J. Plunkett

cc: Frank Rubino, Esq.