UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

THE GUARDIAN NEWS, INC. and
SELIM ZHERKA,

        07Civ. 7078 (CLB)

        Plaintiffs,

-against-

        **INJUNCTION ORDER**

PHILIP AMICONE, et. al.

        Defendants.

----------------------------------------------------------x

This action for a permanent injunction having been tried by the Hon. Charles L. Brieant on November 13, and 14, 2007, without a jury, and the Court having on March 3, 2008, rendered a memorandum and order finding as facts that: the The Westchester Guardian ("Guardian") is a weekly publication that, since August 2006 has been distributed free throughout *inter alia* Westchester County, New York, that voices opinions and statements about local governments and political issues concerning *inter alia* the City of Yonkers; distribution of the Guardian in Yonkers was effected by means of thirty-five to forty blue metal newsrack boxes; from August of 2006 until July 4, 2007, the Guardian's newsracks and the distribution of the Guardian in Yonkers was without incident despite the Guardian's publication in the Fall of 2006 of articles critical of the Yonkers Police Department; commencing with the Guardian's July 5, 2007, edition a series of negative front page articles criticized the incumbent Mayor Philip Amicone ["Amicone Sells Out Families of Yonkers...Embraces Giulio Cavallo Brings in Nick Spano Mob", July 5, 2007, front page headline; "A Tale of Two Cities", "Dumb and

1

Dumber", headlines that referred expressly to Mayor Amicone and the then Mayor of the City of Mt. Vernon, New York", July 9, 2007, front page headline, "Phil Amicone A Huge Flop Fails to Deal With Police Brutality", August 2, 2007, front page headline], who was then running for re-election; those editions were disseminated by means of newsracks on public property in the City, a newsrack situated in an alcove on a stairs in City Hall (opposite a wire newsrack used for the distribution of such periodicals as "City of Vision" and "Home News and Times"), a wire newsrack, by hand outside City Hall, on certain City sidewalks, and within City Hall by Plaintiff Selim Zherka and persons hired by him ("assistants") for that purpose; following dissemination of the July 5, 2007, edition of the Guardian the Guardian's newsracks outside City Hall began disappearing, the newsrack inside City Hall disappeared, the wire newsrack used for the Guardian's distribution was removed and it, along with all copies of the Guardian were scattered on the floor in City Hall; Yonkers police officers began issuing summonses to Zherka and his assistants charging them with violations of Section 100-35 of the Yonkers City Code, and threatening to arrest them if they persisted in distributing the Guardian; on August 21, 2007, in response to correspondence sent by the Guardian's editor, Richard Blassberg, to Mayor Amicone, Police Commissioner Edmund Hartnett, and Public Works Commissioner John A. Liszewski, Defendants' counsel advised Mr. Blassberg that "the City of Yonkers is in possession of approximately 33 'newsracks' which we believe belong to your client", that the newsracks had been removed by the city since they were not in compliance with City regulations and that those newsracks could be retrieved through Commissioner Liszewski; on August 23, 2007, Plaintiff Zherka retrieved from the City's Department of Public Works thirty-five confiscated Guardian newsracks many

2

of which were scratched and dented and others of which had been rendered inoperable; many of the newsracks retrieved by Mr. Zherka still contained editions of the Guardian as published from mid-July to mid-August 2007; no due process hearing and/or administrative proceedings were conducted by the City prior to the confiscation of the Guardian newsracks; during August and September of 2007 Edmond Fitzgerald, Yonkers Corporation Counsel's Law Case Investigator, at the direction of Yonkers' Corporation Counsel, photographed Guardian newsracks on public sidewalks in the City and as confiscated and stored at a City Public Works garage; at no time during 2006 was Mr. Fitzgerald requested by Corporation Counsel to photograph any Guardian newsracks; Commissioner of Public Works John Liszewski, commencing in July or August of 2007, ordered subordinates in his department to remove "any blue box" that was blocking the right of way on City sidewalks; each box removed pursuant to Liszewski's order was a Guardian newsrack; upon complaints made to Liszewski by members of the staff of Mayor Amicone and by Mayor Amicone personally additional Guardian newsracks were targeted for confiscation; First Deputy Chief of the Yonkers Police Department, Charles Gardner, acknowledged that during 2006 no Guardian newsracks were seized by the City, that on July 17, 2007, he learned from either Corporation Counsel or Assistant Corporation Counsel Lawrence Porcari that editions of the Guardian were being distributed inside City Hall, following which various summonses were issued to its distributors, including Mr. Zherka, pursuant to Section 100-35 of the Yonkers City Code the last sentence of which permits "no exceptions. . .for distribution of printed material on public property"; although certain Police Officers claimed that individuals disseminating the Guardian did so while standing in the street, summonses were only

issued pursuant to Section 100-35 and not pursuant to either the New York State Vehicle and Traffic Law and/or a reciprocal provision (Section 109-48) of the City's Code; on August 10, 2007, Robert Greco (Public Works Coordinator for the City of Yonkers) was advised by Commissioner Liszewski that a Guardian news box on the steps of the Will Library in Yonkers was to be removed, and although Liszewski described the box as a "blue box", everyone in the Department of Public Works "knew that they were Guardian news rack boxes"; on August 11, 2007, Liszewski directed Greco to remove Guardian newsracks that were on Yonkers Avenue allegedly blocking traffic and Greco in turn directed his subordinates to remove them although Greco had only seen Guardian news boxes chained to existing fixtures on City sidewalks; for the first time commencing in July 2007 Police Officer Paul Wood issued summonses pursuant to Section 100-35 to various distributors of the Guardian including Cesar Castillo because he was "handing out printed matter inside City Hall to passer bys", Dominica O'Neil for distributing copies of the Guardian approximately eighteen feet from one of the doorways to City Hall, Maribel Ayala for handing out copies of the Guardian on the north side of City Hall also at a distance of eighteen feet from the entrance, Michael Estrada and Richard Guzman for engaging in the same conduct as Ayala; David Simpson, Director of Communications for the City of Yonkers, expressed to the media his belief that the "Guardian was not a newspaper", that the Guardian newsracks were "a propaganda machine to me" because the Guardian "opposed the mayor", and that he and Mayor Amicone had on several occasions discussed the Guardian's distribution during July/August of 2007; there are no written City policies concerning the placement of newsracks within City Hall; David Mason, Manager of Public Works for the City of

Yonkers, never directed any subordinate employees to pick up Guardian newsracks during 2006 or in 2007 prior to July; commencing in July 2007 he was directed by Robert Greco to order his subordinates to confiscate "the free blue newspaper boxes" as a result of which thirty-five Guardian boxes were removed from public areas and stored in the Lake Street DPW garage; Robert Stanley, a City Hall Custodian, confiscated a Guardian newsrack that had been placed inside City Hall, reported this action to City's Deputy Mayor Regan who remarked that what Stanley had done was "fine"; Maribel Ayala, an employee of Mr. Zherka, was issued a summons by a uniformed police officer for distributing copies of the Guardian while she was some fifty feet from a doorway to City Hall, following which and because she was told she would be arrested if she continued that distribution, she ceased distribution activities; Steven Perez, a teenage employee of Mr. Zherka, was issued a summons for handing out copies of the Guardian near City Hall at which time two police officers instructed him that that activity "wasn't allowed on the property"; Mr. Perez departed the City Hall area and along with another employee of Mr. Zherka began distributing the Guardian at the Yonkers Raceway where a police officer assigned to the City's Canine Unit approached them, pulled on black leather gloves, threatened to "bash [their] heads in if you guys don't stop handing out newspapers" and then confiscated five bundles of the newspaper which he put in his police vehicle"; Michael Estrada, another teenage employee of Mr. Zherka, on August 6, 2007, was issued a summons for distributing the Guardian on the east side of City Hall at the bottom of stairs leading to an entrance, told to get off City Hall grounds or be arrested as a result of which he ceased distributing the Guardian; Richard Guzman, another such teenager, was also issued summonses in July 2007 outside the Cacase Justice Center for

distributing copies of the Guardian "because he didn't have a permit", and persuaded to cease doing so under threat of arrest; in August of 2007 Mr. Guzman was distributing the Guardian ten feet from the entrance door to the north side of City Hall when a police officer told him to stop or he would be issued a summons for being "a pawn in the game Sammy [Zherka] was playing", then gave him a summons with the warning that he would be arrested if he continued that distribution; Guzman continued that distribution notwithstanding the threat of arrest on the ground that he had a right to hand out the free newspaper since "It's part of the First Amendment"; Dominica O'Neill, an employee of Mr. Zherkas' during the Summer of 2007 handed out copies of the Guardian outside City Hall, on the first occasion of which she was issued a summons and threatened with arrest a threat that caused her to stop distribution, and on the second occasion on August 6, 2007, when she and Mr. Zherka were walking up the steps to City Hall without having handed out a single copy of the Guardian when Paul Wood advised: "You know I'm going to have to write you a summons" following which he escorted Zherka and O'Neill down the City Hall steps; Police Officer Richard Alaimo issued a summons to Gene Smith, an employee of The Westchester Guardian, Inc. for placing a "blue box" on the corner of New Main Street and South Broadway; Jason Gonzalez, another teenage employee of Mr. Zherka, had two police encounters by reason of his handing out copies of the Guardian during the summer of 2007, during the first of which an officer wrote out but did not give to him a summons and the during the second of which a Canine Unit officer approached him and Mr. Perez advising: "You need to stop handing out these fucking newspapers", threatening to "bash [their] heads in", following which Gonzalez ceased handing out the Guardian out of fear of arrest; Michael Guevara, another teenage

6

employee of Mr. Zherka, while handing the Guardian out inside City Hall was approached by an individual, later identified as Assistant Corporation Counsel Lawrence Porcari, who flashed a badge and asked: "Would you like to get booked for handing out newspapers?", following which Guevara received a summons for distributing the Guardian; Muamer Kllipija, another teenage employee of Mr. Zherka video recorded (using his camera phone) employees of the City's Department of Public Works removing a Guardian newsbox at Yonkers Raceway on Yonkers Avenue at which time those employees told him: "Stop taking pictures, you guys are going to lose. It's not worth it what you guys are doing. So can you please stop fucking taking pictures"; at or about the same time/location Kllipija was issued a summons for handing out the Guardian; Cesar Castillo, another Zherka employee, received a summons for handing out the Guardian inside City Hall near the police desk, following which he went home not wanting to be arrested; Cristian Salazar, another such employee, handed the Guardian out on two occasions on Yonkers Avenue, the first of which resulted in an officer issuing a summons and a warning, "next time, you're getting arrested", a threat that resulted in his ceasing distribution of the newspaper; and upon said findings of fact,

  The Court having made the following conclusions of law: Defendants violated Plaintiffs' First Amendment rights of free speech; the streets and sidewalks of the City of Yonkers are traditional public fora that have immemorially been held in trust for the use of the public and. . .have been used for purposes of assembly, communicating thoughts between cities, and discussing public questions; Yonkers City Hall and Cacace Justice Center are government owned properties designated as public forums for purposes of First Amendment analysis; governments may impose reasonable restrictions on the time

7

place or manner of protected speech in both traditional and designated public forums to further significant government interests so long as such restrictions are content-neutral, narrowly tailored to meet a significant government interest and they leave open ample alternative means of communication; as to Plaintiffs Yonkers City Ordinance 100-35 was applied based on the content of Plaintiffs' speech, and official disagreement with the messages conveyed by the Guardian; the testimony of David Simpson, Yonkers City Director of Communications lends additional if not conclusive proof of the Defendants' content based animus and hostile attitude toward the Guardian, including his contention that the Guardian is "not a newspaper", is merely a channel for "propaganda" against Mayor Amicone, and therefore does not share the same privileges that other Westchester publications and news sources would receive at City Hall or throughout the City; Defendant Amicone's decision not to testify at trial necessarily leads to an inference that he may have been offended by the numerous negative front page articles run against him by the Guardian; newsracks such as those used for distribution of the Guardian further the interest, central to the First Amendment, in securing the widest possible dissemination of ideas; newsracks may be the only means for reaching some readers such as those with unusual working hours or those living in places where it is not economically feasible to maintain newsstands and who do not wish the added expense. . .of home delivery; regulation of newsracks indirectly will determine who will be able to obtain newspapers of their choice; Section 100-35 was applied in this case by the Defendants against Plaintiffs "in order to restrict Plaintiffs speech due to its content"; the Guardian news boxes throughout the City of Yonkers were selectively removed, while other news boxes for the distribution of other newspapers in the same and similar locations were not

8

affected; the Guardian was similarly selectively treated with respect to the distribution of its editions inside City Hall; the City administration cannot curtail the liberty of the press . . .consistently with the purposes of the Constitutional guarantees, and a [city] statute, as the one here involved, which enforces such action by criminally punishing those who attempt to distribute [ ] literature clearly violates the First and Fourteenth Amendments to the Constitution; the varying and inconsistent testimony of the Yonkers police officers leads to the inference that the Yonkers Police were operating on an Order to issue summonses to any person handing out Guardian Newspapers throughout the City; the last sentence of Yonkers Code Section 100-35 is unconstitutional as a complete ban on the right to distribute, a protected activity; Plaintiffs have the right to distribute their newspaper, by hand, on the sidewalks throughout the City of Yonkers, including sidewalks in front of Yonkers City Hall and the Cacace Justice Center provided that no person engaging in distribution blocks the entire sidewalk nor stands in street traffic while distributing the newspaper; distributors of the Guardian may hand copies of the newspaper to motorists that are stopped in the street as long as the distributors remain on the sidewalk while handing out the papers to the motorists; since the City has no policy or ordinance governing handbilling and distribution or written material inside City Hall, that activity is permitted subject to a reservation of rights to the City to lawfully establish such an ordinance; and therefore Plaintiffs are entitled to a permanent injunction to protect their First Amendment rights and those of the public; it is therefore,

ORDERED that Defendants be, and they hereby are prospectively permanently enjoined from enforcing against the Plaintiffs the final sentence of Yonkers Code Section 100-35, and it is,

ORDERED that Defendants be, and they hereby are prospectively permanently enjoined from interfering with Plaintiffs' placement of Guardian newsracks within the City, as long as those of other newspapers are permitted, and the newsracks of the Guardian comply with the provisions of Section 33 of the Yonkers City Code, and it is,

ORDERED the Defendants be, and they hereby are prospectively permanent enjoined from charging the Plaintiffs with any violation of Section 33 of the said Code without first strictly complying with the procedures outlined in Section 33-5 of the City Code prior to the removal of any Guardian newsrack, and it is,

ORDERED that Defendants be, and they are hereby are directed to restore to the *status quo ante* the wire newsrack that was removed from the City Hall staircase during August 2007, and it is,

ORDERED that Defendants be, and they are hereby permanently enjoined from enforcing the final sentence of Yonkers Code Section 100-35, which provides: "No person shall distribute, hand out or cast about any card, circular, pamphlet or printed matter within any park or upon any public place", and it is,

ORDERED that all charges resulting from summonses issued to Defendants and/or any of the individuals who distributed the Guardian in alleged violation of Section 100-35 be and the same are dismissed and Defendants are permanently prospectively enjoined from prosecuting same; and it is

ORDERED that Defendants be and they here by are mandatorily enjoined to forthwith return to the The Westchester Guardian, Inc. all property of the Westchester

Guardinan, Inc., including newsracks and copies of editions of the Guardian in their possession, custody and/or control.

Dated: White Plains, N.Y.
      March ___, 2008

                SO ORDERED:

                _____
                    Charles L. Brieant
                  United States District Judge